UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:17-CV-50-RJ

CRYSTAL OWENS SMITH,

    Plaintiff/Claimant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-20, -25] pursuant to Fed. R. Civ. P. 12(c), as well as Claimant Crystal Owens Smith's ("Claimant") Motion for Inclusion of Audio Recording ("Motion for Inclusion") [DE-19]. Defendant has responded to Claimant's Motion for Inclusion, [DE-24]. Claimant filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefing has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Inclusion is denied, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on September 30, 2013, alleging disability beginning April 25, 2013. (R. 369–72). Her claim was

denied initially and upon reconsideration. (R. 273–307). A hearing before the Administrative Law Judge ("ALJ") was held on January 26, 2016, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 222–72). On February 22, 2016, the ALJ issued a decision denying Claimant's request for benefits. (R. 197–221). Claimant then requested a review of the ALJ's decision by the Appeals Council, (R. 181), and submitted additional evidence as part of her request, (R. 11–176, 182–96). After reviewing and incorporating additional evidence, the Appeals Council denied Claimant's request for review on February 8, 2017. (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*,

76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based

3

on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant generally alleges the following errors: (1) failure to properly assess Listing 12.07; (2) failure to properly weigh opinion evidence; and (3) failure of the Appeals Council to properly consider all of the evidence. Pl.'s Mem. [DE-21] at 2.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 202). Next, the ALJ determined Claimant had the following severe impairments: fibromyalgia, affective disorder, somatoform disorder, obesity, and moderate right facet joint degenerative joint disease. (R. 203). The ALJ also found Claimant's knee issues to be a non-severe impairment. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 203–05). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in moderate restriction in her activities of daily living, in social functioning, and with regard to concentration, persistence, or pace, with no episodes of decompensation. (R. 204). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with postural and environmental restrictions as follows:

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

> [T]he claimant is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs. However, the claimant must avoid all climbing of ladders, ropes, and scaffolds. Due to mental deficits, the claimant is limited to simple, routine, and repetitive tasks not performed at a production rate pace. Additionally, the claimant is limited to jobs requiring only superficial contact with coworkers or the general public. The claimant is further limited to only occasional changes in the work setting.

(R. 205–14).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a customer service supervisor and retail salesperson. (R. 214). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 215–16).

## V. DISCUSSION

### A. Motion for Inclusion

Claimant argues that, pursuant to Rule 106 of the Federal Rules of Evidence, she is entitled to have the full audio recording of the ALJ hearing included in the record because the written transcript excludes "multiple sounds emanating" from Claimant during the hearing. Pl.'s Mot. [DE-19] at 1–2. In particular, Claimant notes "hysterical[] crying, and screaming" which was not included in the written transcript. *Id.* at 2. The Commissioner argues that, pursuant to 42 U.S.C. § 405(g), only a certified copy of the transcript is required to be placed into the record, and that the court is not at liberty to consider evidence not in the record on review. Def.'s Opp'n [DE-24] at 1–2 (quoting *Atteberry v. Finch*, 424 F.2d 36, 39 (10th Cir. 1970)). Further, the Commissioner argues that the transcript sufficiently reflects Claimant's "crying, raising her voice, being admonished not to scream because it offended the ALJ, [and] having to take a break." *Id.* at 3 (citing R. 235, 237, 241, 246, 251, 255, 256).

5

Claimant makes no argument in her subsequent Motion for Judgment on the Pleadings to indicate a request that her case be remanded pursuant to sentence six of 42 U.S.C. § 405(g), and therefore the court analyzes her case pursuant to sentence four of § 405(g). *See* Pl.'s Mem. [DE-26]. Sentence four provides that "[t]he court shall have power to enter, *upon the pleadings and the transcript of record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g) (emphasis added). Claimant provides no authority for the court to include the audio recording in its review, other than Federal Rule of Evidence 106, and sentence four does not authorize the court to "admit new evidence into the record or to base its decision on anything outside of the administrative record and pleadings." *Owens v. Comm'r of Soc. Sec.*, No. 8:14-cv-2064-T-DNF, 2015 WL 5735607, at *4 (M.D. Fla. Sept. 22, 2015). Finally, the transcript does in fact reflect certain noises from Claimant and that breaks that were taken, in contravention of Claimant's position that the transcript "does not constitute a full fair, and accurate transcript of the entire record." Def.'s Opp'n [DE-24] at 3; Pl.'s Mot. [DE-19] at 1; *see* (R. 235, 237, 241, 251, 255-56). Accordingly, Claimant's motion is denied.

**B.     Listing 12.07**

Claimant contends that the ALJ erred in failing to consider whether Claimant's mental impairments meet or equal Listing 12.07 (Somatic Disorders). Pl.'s Mem. [DE-21] at 17–19. "[A]lthough the ALJ should 'identify the relevant listings and . . . explicitly compare the claimant's symptoms to the requirements[,] . . . [m]eaningful review may be possible even absent the explicit step-by-step analysis . . . where the ALJ discusses in detail the evidence presented and adequately explains his consideration thereof." *Chaple v. Astrue*, No. 5:11-CV-61-D, 2012 WL 937260, at *2 (E.D.N.C. Mar. 20, 2012) (quoting *Johnson v. Astrue*, No. 5:08-CV-515-FL,

6

2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009); citing *Green v. Chater*, No. 94-2049, 1995 WL 478032, at *3 (4th Cir. Aug. 14, 1995); *Russell v. Chater*, 60 F.3d 824 (4th Cir. 1995)).

To satisfy any of the Mental Disorders Listings, the Claimant must satisfy "the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00. Listing 12.07 contains the same paragraph B criteria as Listings 12.04 and 12.06. *Id.* §§ 12.04, 12.06, 12.07. The ALJ, in considering whether Claimant met Listings 12.04 or 12.07, considered Claimant's mental impairments, singly and in combination, and found that they failed to satisfy the paragraph B criteria. (R. 203). Listing 12.07 does not contain an alternative set of paragraph C criteria; thus, the ALJ's finding that Claimant did not satisfy the paragraph B criteria is conclusive with respect to Listing 12.07. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.07. Claimant's argument is limited to restating the requirements of Listing 12.07, apart from the paragraph B criteria, and explaining how her inability to ambulate satisfies the Listing. Nowhere in her argument does Claimant address the requisite paragraph B criteria. Accordingly, the court finds that the ALJ appropriately related Claimant's impairments to the paragraph B criteria—a requirement for meeting or equaling Listing 12.07—and therefore Claimant's argument is without merit.

## C.    Opinion Evidence

Claimant contends that the ALJ erred by not according great weight to the opinions of Lindsay Wilson, PA-C, Dr. Cameron Gordon, Dr. Christy Jones, Dr. Richard Campbell, and Dr. Peter Morris. Pl.'s Mem. [DE-21] at 21–22. The Commissioner counters that the ALJ properly evaluated the opinions. Def.'s Mem. [DE-26] at 22.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20

C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), the weight afforded such opinions must nevertheless be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly

8

a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

### i. Lindsay Wilson, PA-C

Claimant contends the ALJ erred by not according great weight to Ms. Wilson's opinion that Claimant "could not sustain employment." Pl.'s Mem. [DE-21] at 21. Ms. Wilson treated Claimant at Coastal Rehabilitative Medicine for pain management. *Id.* The Commissioner contends that the ALJ did not err in his assignment of weight because Ms. Wilson's opinion "was inconsistent with the treatment history." Def.'s Mem. [DE-26] at 23. The ALJ evaluated Ms. Wilson's opinion as follows:

> Finally, on January 11, 2016, PA-C Wilson opined that the claimant would not be able to maintain employment of any type because the claimant "is unable to sit, stand, or lay flat for extended periods of time because of pain and discomfort" (Exhibit 29F/1). Additionally, due to pain and depression symptoms, PA-C Wilson opined that the claimant would "not be able to attend a job daily" due to her inconsistent pain symptoms (Exhibit 29F/1). Given PA-C Wilson's treatment history with the claimant, I have provided this statement with some weight (Exhibit 29F/1). However, I have also found that it is inconsistent with PA-C Wilson's treatment history with the claimant where she notes concerns that the claimant has not remained compliant with her treatment regimen. Reviewing her treatment notes, PA-C Wilson noted that the claimant was not positive towards treatment, the claimant received benefit from injections and narcotic medications, but the claimant failed to exercise or lose weight (Exhibits 16F/9, 19F/6-14, 9F/28, and 21F/8-79). Therefore, I have provided this statement reduced weight (Exhibit 29F).

(R. 213). The ALJ discounted the opinion because it was inconsistent with Ms. Wilson's treatment records, which indicated that Claimant was not fully abiding by her treatment plan and that she was experiencing symptom relief from her injections and medications. *See e.g., Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); *Bethea v. Colvin*, No. 7:15-CV-72-FL, 2016 WL

9

4076849, at *6 (E.D.N.C. Aug. 1, 2016) ("Where 'evidence shows that in the relevant period [the claimant] had considerable access to both medical treatment and medication,' it is not error for the ALJ to 'consider[] the inconsistency between her level of treatment and her claims of disabling pain.'"). Accordingly, the court finds the ALJ appropriately considered this opinion, explained the reasons for discounting it, and therefore did not err.

### ii. Dr. Cameron Gordon

Claimant contends the ALJ erred by not according great weight to Dr. Gordon's opinion that Claimant was unemployable. Pl.'s Mem. [DE-21] at 21. Dr. Gordon treated Claimant from spring 2013 until 2017. *Id.* The Commissioner contends that the ALJ did not err in his assignment of weight because Dr. Gordon's opinion was inconsistent with his own treatment notes. Def.'s Mem. [DE-26] at 24. The ALJ evaluated Dr. Gordon's opinion as follows:

> On January 4, 2016, the claimant's treating psychologist, Dr. Gordon, opined that he believed that Dr. Jones's findings were consistent with what he had observed (Exhibit 25[]F/2). Additionally, Dr. Gordon opined that the claimant's symptoms would "severely disrupt her ability to concentrate and perform normal tasks on a daily basis" (Exhibit 25F/2). Although there is a lapse between Dr. Gordon's treatment of the claimant and this statement, I have provided it with partial weight (Exhibit 25F). However, on January 7, 2016, Dr. Gordon assessed the claimant with several impairments including major depressive disorder and a GAF score of 40 (Exhibit 27F/4). Although Dr. Gordon opined marked limitations in some areas, his opinions were often inconsistent (Exhibit 27F/3). Specifically, Dr. Gordon opined that the claimant had no limitation in her ability to make simple work-related decisions (Exhibit 27F/3). Conversely, he also opined the claimant would be slightly, and even markedly limited, in her ability to understand and carry out very short and simple instructions (Exhibit 27F/3). Given these internal inconsistencies, I have determined that Dr. Gordon's [opinions] are not supported by his explanation and are inconsistent with his own treatment history with the claimant (Exhibit 27F). Therefore, this time, I have provided Dr. Gordon's opinions with little weight (Exhibit 27F).

(R. 213). The ALJ discounted the opinion because it was inconsistent with Dr. Gordon's treatment records. It is clear to the court that the ALJ reviewed Dr. Gordon's opinion, and

10

appropriately explained her reason for discounting the opinion based on the evidence in the record. Accordingly, the court finds the ALJ did not err.

### iii. Dr. Christy Jones

Claimant contends the ALJ erred by not according great weight to Dr. Jones' opinion, specifically her opinion that "[Claimant]'s levels of depression and anxiety are at least severe on psychometric testing" with diagnoses of major depressive episode, recurrent, severe, with anxious distress, along with somatoform symptom disorder with predominant pain and borderline personality traits. Pl.'s Mem. [DE-21] at 21. The Commissioner contends that the ALJ did not err in her assignment of weight because the opinion was provided for the purpose of screening for a pain pump trial, and therefore is not probative of Claimant's ability to work. Def.'s Mem. [DE-26] at 24. The ALJ evaluated Dr. Jones' opinion as follows:

> On June 3, 2015, the claimant presented for a consultative mental examination with Christy Jones, Ph.D., as part of a screening to determine if the claimant was a good candidate for a pain pump trial (Exhibit 18F). During the examination, the claimant was observed using a wheelchair and she reported an inability to move her legs or feet (Exhibit 18F/1). The claimant also reportedly "started crying early into the interview, she never stopped." After the claimant recounted her complicated history, including childhood physical trauma, Dr. Jones administered several diagnostic tests (Exhibit 18F/2–3). After the examination, Dr. Jones diagnosed the claimant with several impairments including depression (Exhibit 18F/3). However, Dr. Jones noted that the claimant was not currently receiving psychotherapy due to financial constraints (Exhibit 18F/3). For treatment, Dr. Jones recommended the claimant resume psychiatric treatment with psychotherapeutic intervention (Exhibit 18F/3). Due to her current depression, without recurring treatment, Dr. Jones would not recommend the claimant for a pain pump trial (Exhibit 18F/3). Although I have provided some weight to the claimant's diagnosis and concerns about the claimant's lack of treatment, given that this examination was for the purpose of screening for a pain pump trial, I have provided Dr. Jones' opinions with little weight (Exhibit 18F).

(R. 212). The ALJ discounted the opinion because it was a one-time visit and Dr. Jones' consultative examination was limited for the purpose of screening Claimant for a pain pump

11

trial. *See* 20 C.F.R. § 404.1527(d)(2) (listing treatment relationship as a factor to consider in weighing opinion evidence). Accordingly, the court finds the ALJ appropriately considered this opinion and did not err.

### iv. Dr. Richard Campbell

Claimant contends the ALJ erred by not specifically including in his discussion of Dr. Campbell's opinion the statement in which he opines that, "[a]s for her ability to tolerate the stress and pressures associated with day-to-day work, her current mood difficulties and overall instability suggest that she would have difficulty managing her work setting adequately presently." Pl.'s Mem. [DE-21] at 23 (citing R. 632). The Commissioner counters that the ALJ appropriately evaluated Dr. Campbell's opinion. Def.'s Mem. [DE-26] at 26. The ALJ evaluated Dr. Campbell's opinion as follows:

> On December 18, 2013, the claimant presented for a mental consultative examination with Richard Campbell, Ph.D (Exhibit 5F). The claimant reported that she was terminated from her full-time position on October 23, 2013, after she ran out of short-term disability (Exhibit 5F/2). During the examination, the claimant was observed walking albeit stiffly (Exhibit 5F/2). Additionally, she reported a history of childhood abuse (Exhibit 5F/3). Despite recurring problems with insomnia, the claimant testified that she spends time watching television, attending to her animals, using the internet, and interacting with her husband (Exhibit 5F/3). Although she reported that she does not perform any household chores, the claimant reported that she helps her husband with their finances (Exhibit 5F/3). After concluding the examination, Dr. Campbell diagnosed the claimant with multiple impairments including chronic pain disorder and major depression (Exhibit 5F/5). Regarding the claimant's capacity to work, Dr. Campbell opined that the claimant's limitations might "result in periodic attention and concentration" limitations (Exhibit 5F/5). However, Dr. Campbell went on to say that the claimant would likely "relate adequately with others" and would be able to tolerate the stress and pressures associate[d] with day-to-day work if she could achieve psychiatric stability (Exhibit 5F/5). Specifically, Dr. Campbell opined that with "adequate psychiatric care" the claimant "would be able to manage her work from a psychological point of view" (Exhibit 5F/6). Based upon a direct examination, and consistent with the claimant's history indicating improvement with treatment, I have provided Dr. Campbell's opinion great weight (Exhibit 5F).

12

(R. 212). The ALJ is not required to recite her consideration of each piece of evidence in the record. *See Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762, n.10 (4th Cir. 1999) ("If a reviewing court can discern 'what the ALJ did and why he did it,' the duty of explanation is satisfied") (quoting *Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs*, 137 F.3d 799, 803 (4th Cir. 1998)); *Brewer v. Astrue*, No. 7:07-CV-24-FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) ("[T]he ALJ is not required to comment in the decision on every piece of evidence in the record and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered.") (citing *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995)). It is clear to the court, based on the ALJ's lengthy discussion of Dr. Campbell's opinion, that the opinion was properly considered and evaluated appropriately. Accordingly, the court finds the ALJ did not err by failing to cite each part of Dr. Campbell's opinion when it is clear that the opinion, as a whole, was properly considered.

v. **Dr. Peter Morris**

Claimant contends the ALJ erred by not according great weight to Dr. Morris' opinion, specifically when he opined that Claimant is able to stand and walk less than two hours, appeared to need an assistive device, could lift less than ten pounds occasionally, and would not be able to perform postural activities due to her inability to demonstrate any postural maneuvers on examination. Pl.'s Mem. [DE-21] at 22 (citing R. 655). The Commissioner counters that the ALJ appropriately discounted Dr. Morris' opinion because the report relied heavily upon Claimant's own reports of limitations. Def.'s Mem. [DE-26] at 25. The ALJ evaluated Dr. Morris' opinion as follows:

> On February 4, 2014, the claimant presented for a consultative examination with Peter Morris, M.D. (Exhibit 7F). During the examination, the claimant reported

13

> that she does not exercise, she requires assistance with her personal hygiene needs, and she is unable to perform any household chores (Exhibit 7F/3). However, the claimant failed to perform any of the exercises requested including refusing to ambulate and not being able to perform any of the postural maneuvers (Exhibit 7F/7). In his conclusion, Dr. Morris opined that it would be difficult to estimate the claimant's ability to stand or walk since she "was unable to try any walking" (Exhibit 7F/7). However, Dr. Morris opined that the claimant would be able to stand for less than two hours, sit for six hours, occasional reaching, perform no postural activities, and no activities involving heights or heavy machinery (Exhibit 7F/7). Although I have fully considered Dr. Morris' opinions, given that he relied heavily upon the claimant's own reports of limitations, rather than his own exam observations, I have provided Dr. Morris' opinions with little weight (Exhibit 7F).

(R. 212). Dr. Morris is not a treating physician, having only conducted a consultative examination of Claimant. In giving little weight to Dr. Morris' opinion, the ALJ noted that it appeared that Dr. Morris relied heavily upon the subjective report of symptoms and limitations provided by Claimant, and seemed to uncritically accept as true most, if not all, of what Claimant reported without any objective testing. Accordingly, the court finds that the ALJ did not err by discrediting Dr. Morris' opinion where he primarily relied on Claimant's subjective reporting. *See Bishop v. Comm'r of Soc. Sec'y*, 584 Fed. Appx. 65, 67 (4th Cir. 2014) (affirming ALJ decision to reject medical opinion that "appeared to mirror . . . subjective statements" and contrasted relatively "mild to moderate" findings reflected in treatment notes); *Craig*, 76 F.3d at 589 (affirming ALJ decision to reject medical opinion evidence based on subjective symptoms unsupported by treatment notes). Therefore, the court finds that the ALJ appropriately considered the opinion evidence cited by Claimant and there is no error.

**D.    Additional Evidence**

Lastly, Claimant seemingly contends that the Appeals Council erred by not considering new evidence that was presented to them in conjunction with Claimant's request for review. Pl.'s Mem. [DE-21] at 24–25. It is unclear to the court which pieces of evidence Claimant contends

14

were not considered. Claimant specifically only mentions Ms. Wilson's April 18, 2016 opinion, and Dr. Gordon's February 3, 2016 opinion in her argument, as well as documentation that the ALJ has a 92% denial rating. *Id.* The Appeals Council incorporated nine exhibits into the record. (R. 6–7).

The Appeals Council must consider evidence submitted by a claimant with a request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991), *superseded on other grounds by* 20 C.F.R. § 404.1527; 20 C.F.R. § 404.976(b)(1) (effective to Feb. 4, 2016) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."). Evidence is new if it is not duplicative or cumulative, and material if there is a "reasonable possibility that the new evidence would have changed the outcome of the case." *Wilkins*, 953 F.2d at 96. The Appeals Council need not review or consider new evidence that relates only to a time period after the ALJ issued the decision. *See* 20 C.F.R. § 404.976(b)(1) (effective to Feb. 4, 2016) (stating that, on review, "[i]f [a claimant] submit[s] evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [his/her] right to file a new application."). Additionally, the Appeals Council need not explain its reason for denying review of an ALJ's decision. *Meyer v. Astrue*, 662 F.3d 700, 702 (4th Cir. 2011). However, "the Appeals Council must consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review."

*Wilkins*, 953 F.2d at 95.

The Appeals Council stated it reviewed the following records, but determined that they were not new because they were copies of exhibits already in the record: (1) Trinity Wellness Center dated August 11, 2015 through February 9, 2016 (18 pages), which are already contained in Exhibit 31F, (R. 1083–1100); (2) the medical records from John Boldizar, M.D., dated January 5, 2016 (2 pages), which are already contained in Exhibit 26F, (R. 971–72); (3) the medical records from Lindsay Wilson, PA-C, dated January 11, 2016 (1 page), which are already contained in Exhibit 29F, (R. 989); (4) the medical records from Cameron Gordon, Ph.D., dated January 7, 2016 (4 pages), which are already contained in Exhibit 27F, (R. 973–76); (5) the medical records from Cameron Gordon, Ph.D., dated January 4, 2016 (1 page), which are already contained in Exhibit 25F (R. 970); and the medical records from Christy L. Jones, Ph.D., dated June 3, 2015 (3 pages), which are already contained in Exhibit 18F, (R. 759–61). (R. 2). Because these records are not new and were already considered by the ALJ, the court finds the Appeals Council was correct in not considering them, pursuant to *Wilkins*. The court notes one of the specific records referenced by Claimant in his argument is Dr. Gordon's February 3, 2016 record, which is contained in Exhibit 31F, and therefore was before the ALJ for her consideration.

The Appeals Council also stated it "looked at" the following medical records, but concluded the "new information is about a later time" because the ALJ decided the case through February 22, 2016, and "therefore, it [did] not affect the decision about whether [Claimant] w[as] disabled beginning on or before February 22, 2016:" medical records from Coastal Rehabilitation Medicine Associates dated February 29, 2016 through March 24, 2016 (7 pages) and dated April 28, 2016 through August 4, 2016 (19 pages); the medical records from New

16

Hanover Regional Medical Center dated April 22, 2016 through September 13, 2016 (41 pages); medical records from Lindsey Wilson, PA-C, dated April 18, 2016 (3 pages); and the medical records from Trinity Wellness Center dated April 4, 2016 (5 pages). (R. 2). Claimant's argument seems to focus only on Ms. Wilson's April 18, 2016 opinion, (R. 182–84), which Claimant argues the ALJ committed reversible error by not considering because it "expanded an earlier opinion" and therefore should not have been discounted simply because it was created after the date the ALJ's decision was rendered. Pl.'s Mem. [DE-21] at 24.

First, the court must determine whether the Appeals Council considered and incorporated the additional evidence into the record, or simply determined that it did not relate to the relevant period and thus did not consider it. It is clear that, while the Appeals Council "looked at" Ms. Wilson's letter, it did not consider it and incorporate it into the record because the Appeals Council explicitly stated that the record was from a later time and did not list it in the Order of Appeals Council. (R. 6–7). Accordingly, the court must determine whether Ms. Wilson's letter is new, material, and relates to the period on or before the date of the ALJ's decision. *Wilkins*, 953 F.2d at 95. If so, the Appeals Council erred in failing to consider it, and the matter must be remanded.

Ms. Wilson's April 18, 2016 letter is addressed to Claimant's counsel and is written in response to the ALJ's findings. In it, she states that she does "not agree with the judge[']s findings" and restates Claimant's impairments: pain from a moderately desiccated disc at L4/5 with right sided facet edema and arthropathy; small annular tear with protrusion at L5/S1; fibromyalgia; numbness and burning into all extremities; and depression. (R. 183). She states that "medications and treatment options have been tried," and they "have the pain at a more reasonable level at this time, but being in chronic pain affects [Claimant] mentally." *Id.* She

concludes by stating that, "I certainly do not think she has the physical or mental capabilities to hold steady full or part time employment." *Id.* None of this information is new—rather it is a restatement of the evidence already contained in the record and therefore considered by the ALJ. Further, the opinion does not relate back to the relevant time period before the ALJ decision because Ms. Wilson's letter was created nearly two months after the decision was rendered, and, while it does relate to Claimant's ongoing impairments, it does not relate back to the time prior to the ALJ's decision. Rather, it describes Claimant's symptoms as of April 18, 2016, not the period prior to February 22, 2016. Accordingly, the court finds the Appeals Council did not err in finding that Ms. Wilson's letter did not relate to a period before the date of the ALJ's decision and therefore did not consider it and incorporate it into the record.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Inclusion is DENIED [DE-19], Claimant's Motion for Judgment on the Pleadings [DE-20] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-25] is ALLOWED, and the final decision of the Commissioner is UPHELD.

So ordered the 22nd day of February 2018.

Robert B. Jones, Jr.
United States Magistrate Judge